IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:15CR445 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| TAMELA LEE, | ) | DEFENDANT'S OBJECTIONS TO |
| | ) | GUIDELINES CALCULATION |
| Defendant. | ) | |

The Presentence Report calculates Tamela Lee's total offense level to be 28, resulting in a guidelines range of 78 to 97 months in prison. But those calculations include increases of 2 levels for the value of things she received and 4 levels for her role in the offense, which are not supported by – and conflict with -- the evidence at trial. No such enhancements were added to the guideline calculation of Ms. Lee's co-defendant, Omar Abdelqader.[1] This Court should reject those enhancements and calculate Lee's total offense level to be 22, resulting in a guidelines range of 41 to 51 months in prison.

**I.  Ms. Lee's guideline calculation should not be increased 2 levels for the value of things she received.**

Under sections 2C1.1(b)(2) and 2B1.1(b)(1)(B) of the sentencing guidelines, two points are added to the base offense level of the briber and the public official if the value of the bribes to a public official exceeds $6,500 but is less than $15,000.

The government did not attempt to apply this increase to Ms. Lee's co-defendant, Mr. Abdelqader, who was convicted of conspiring with Ms. Lee and paying her the bribes for which she was convicted. This is understandable, since the evidence does not support it.

---

[1] Mr. Abdelqader received no points for the value of things that he gave and two points for his role in the offense.

1

The government introduced numerous exhibits and summary charts at trial. None claimed that Ms. Lee received more than $6,500 in bribes. No one testified that Ms. Lee received more than $6,500 in bribes, or anything even close to that amount. Much of what she received was cigarettes, potato chips and candy from a grocery store. *See* PSR at 23.

In seeking this enhancement for Ms. Lee, the government relies heavily on a statement made by Mr. Abdelqader, in a July 31, 2014 phone call, where he claimed that he was paying Ms. Lee $200 to $300 per week in cash and "cigarettes, chips candy and this and that ****[,]"[2] which, it says, would come to $800 - $1,200 per month. PSR ¶ 32; *see also* PSR at 23 (citing phone call in response to defense objection that Lee did not receive $800-$1,200 per month).

But Mr. Abdelqader was exaggerating, which he did often in his conversations with other grocers:

In that same call, Abdelqader falsely said, "yesterday, I gave her one thousand dollar[,]" R. 127, Trial Tr. Vol. 2 at 341 (Gov't Ex. 188), whereas a recorded call between Abdelqader and Lee and bank records show that he only gave her $400- $500, *see* R. 132, Trial Tr. Vol. 3 at 572 (Gov't Ex. 184) ("ABDELQADER: I got $500 for you from those people. LEE: That's good, so far, you know I can put that in the bank."); *id.* at 572-73 (Gov't Ex. 9-13) (bank records showing Lee made $400 cash deposit on July 31, 2014).

And only the day before, he said in another recorded call that he gave Ms. Lee not $800 to $1,200 per month but $400 or $500 per month—less than half. R. 127, Trial Tr. Vol. 2 at 308 (Gov't Ex. 210) ("I mean that, she easily costs me 400, 500 dollars per month!"). Yet, no evidence was submitted to corroborate either sum. And in his conversations with Ms. Lee, no such

---

[2] R. 127, Trial Tr. Vol. 2 at 331 (Gov't Ex. 188).

sums were ever mentioned—no weekly amounts, no monthly amounts, nothing that would support any of these numbers.

Choosing the largest sum he ever states in his numerous phone calls—the $200 to $300 per week—the government extrapolates to get to over $6,500, saying that he made the payments "over an extended period of time." PSR ¶ 32. But Mr. Abdelqader did not say for how long he made these purported payments. And no evidence was introduced for how many weeks—let alone months—such payments or gifts of cigarettes and candy were made. The government is just guessing.

The evidence at trial was that Ms. Lee received less than $6,500. There was evidence that she "received $500 in car repairs in a bribe." PSR ¶32. And there was evidence that she "took $550 from her campaign bank account to cover her depleted personal account." *Id.* But since the $550 Ms. Lee took from her campaign account was not a payment from a briber, it is not properly included in the computation of the value of payments and things she received. *See* USSG §2C1.1(b)(2).

Just as Mr. Abdelqader received no increase in his guideline calculation based on the value of things Ms. Lee received, nor should she, and the Court should reject the proposed two-point enhancement for the value of payments.

**II.     Ms. Lee's guideline calculation should not be increased based on the extent of criminal activity or her role in the offense.**

The PSR also improperly adds four points for the extent of criminal activity and Lee's role in that activity. Lee's unsuccessful attempts to influence other public officials do not establish that she was an organizer or leader of criminal activity that was extensive; they establish that

3

she was acting as one individual, not as an organizer or leader, and that the activity did not involve five or more participants nor was otherwise extensive.

Section 3B1.1 provides for offense-level enhancements for certain roles:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor of any criminal activity other than described in (a) or (b), increase by 2 levels.

Thus, the Court must make two determinations: (1) whether or not the criminal activity involved five or more participants or was otherwise extensive; and (2) whether or not Lee was an organizer, leader, manager, or supervisor.

(1) <u>Extent of Criminal Activity</u>: The criminal activity here did not involve five or more participants. A participant is "a person who is criminally responsible for the commission of the offense," not an unwitting contributor. *See* USSG §3B1.1 n.1. Neither the government nor the PSR has contended that there were five or more participants in this case. *See* PSR ¶ 35.

And the criminal activity here was not "otherwise extensive." To determine whether criminal activity is otherwise extensive, this Court must examine "(i) the number of knowing participants; (ii) the number of unknowing participants whose activities were organized or led by the defendant with specific criminal intent; and (iii) the extent to which the services of the unknowing participants were peculiar and necessary to the criminal scheme." *United States v. Anthony*, 280 F.3d 694, 701 (6th Cir. 2002). Here, the analysis ends at the second step, because Lee did not organize or lead any unknowing participants. Lee did not, for example, direct the actions of county employees that reported to her as a county councilwoman. Rather, she spoke with a

4

judge and a prosecutor and wrote a letter to the IRS, whose actions she could not direct, and she was unsuccessful in trying to influence them.

Because the criminal activity here did not involved five or more participants and was not otherwise extensive, this Court should not add three or four points under section 3B1.1 This again is consistent with Abdelqader's sentencing—no three- or four-point enhancement was added or sought based on any allegation that he participated in extensive criminal activity.

(2) <u>Role in the Offense</u>: Furthermore, this Court should not add even two points because Lee was not an organizer, leader, manager, or supervisor of the criminal activity. "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants," or one who "exercised management responsibility over the property, assets, or activities of a criminal organization." USSG §3B1.1 n.2. Lee did not organize, lead, manage, or supervise any other participants, and did not manage any property, assets, or activities. Unlike Abdelqader, who recruited and supervised Albanna and others and received a two-point enhancement for his role, Lee performed only her own activities. Accordingly, no two-point role enhancement is warranted.

### III. Conclusion

Because Lee did not receive over $6,500, this Court should reject the PSR's proposed two-point enhancement for the value of things received. Because Lee was not an organizer, leader, manager, or supervisor of five or more participants, of otherwise-extensive criminal activity, or of anything else, this Court should also reject the PSR's proposed four-point enhancement for role in the offense. Accordingly, Lee's total offense level should be 22, and her advisory guidelines range should be 41 to 51 months in prison.

Respectfully submitted,

/s/ Philip S. Kushner
Philip S. Kushner (0043858)
Christian J. Grostic (0084734)
Kushner, Hamed & Grostic Co., LPA
1375 East Ninth Street, Suite 1930
Cleveland, Ohio 44114
(216) 696-6700
Facsimile: (216) 696-6772
pkushner@kushnerhamed.com
cgrostic@kushnerhamed.com

*Attorneys for Defendant Tamela Lee*

## **CERTIFICATE OF SERVICE**

A copy of the foregoing *Defendant's Objections to Guidelines Calculations* was filed electronically this 27th day of July, 2017. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Philip S. Kushner
*Attorney for Tamela Lee*